FILED
CHARLOTTE, NC

SEP 1 8 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-cr-270-KDB |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | Violations:    18 U.S.C. § 371 |
| (1) MARIAN OVIDIU DUMITRU and | ) | 18 U.S.C. § 1029(a)(3) |
| (2) CATALIN DUMITRU | ) | 18 U.S.C. § 1029(a)(4) |
| | ) | 18 U.S.C. § 1028A |
| | ) | 18 U.S.C. § 1343 |
| | ) | |
| _____ | ) | |

**THE GRAND JURY CHARGES THAT:**

## INTRODUCTION

At all times material to this Bill of Indictment:

1. Beginning no later than July 30, 2024, and continuing through August 2, 2025, defendants (1) MARIAN OVIDIU DUMITRU (MARIAN DUMITRU) and (2) CATALIN DUMITRU, and others known and unknown to the grand jury, were members of an identity theft ring operating in and around Mecklenburg County, within the Western District of North Carolina, and elsewhere. The defendants and their coconspirators would reprogram blank cards with magnetic strips and gift and banking cards with data skimmed from genuine electronic benefit transfer (EBT) cards used to distribute benefits to persons eligible for assistance under the United States Department of Agriculture (USDA) Food and Nutrition Service's Supplemental Nutrition Assistance Program (SNAP). The defendants and their coconspirators used these cloned access devices and the data stolen from SNAP beneficiaries' accounts to fraudulently purchase goods and wares from membership warehouses and other stores in Mecklenburg and Gaston Counties in North Carolina, and elsewhere. The defendants and their coconspirators defrauded SNAP programs in New Jersey, Massachusetts, and other states of at least $766,000.

2. Defendants MARIAN DUMITRU and CATALIN DUMITRU were Romanian citizens and brothers. MARIAN DUMITRU maintained a residence in Charlotte, North Carolina.

3. Y.P., a resident of New Brunswick, New Jersey, was a SNAP beneficiary with a SNAP EBT card account ending in 9928.

4. M.M., a resident of Trenton, New Jersey, was a SNAP beneficiary with a SNAP EBT card account ending in 2946.

5. L.M., a resident of Hyde Park, Massachusetts, was a SNAP beneficiary with a SNAP EBT card account ending in 1042.

6. I.J., a resident of Mattapan, Massachusetts, was a SNAP beneficiary with a SNAP EBT card account ending in 4613.

### The Supplemental Nutrition Assistance Program

7. USDA was the United States federal executive department responsible for developing and executing U.S. federal government policy on farming, agriculture, forestry, and food.

8. SNAP, formerly known as the Food Stamp Program, was a program funded by the USDA in accordance with the Food Stamp Act of 1977. The USDA worked with state agencies to assist eligible low-income individuals to purchase groceries and certain food items.

9. Between 1939 and 2001, food stamp program beneficiaries were issued paper coupons, or food stamps, to acquire low or no cost food for themselves and their families. In 2001, the program transitioned from a paper coupon system to the current electronic system of access devices to distribute SNAP benefits. Since 2001, SNAP benefits were deposited into accounts linked to beneficiaries' SNAP EBT cards, which could be used on the same electronic infrastructure as debit and credit cards issued by banks.

10. Each SNAP EBT card had a unique EBT number that was encoded on the card. Recipients also used unique personal identification numbers (PINs) as a security feature. Each month, SNAP EBT cards were automatically credited with food stamp benefits to subsidize food purchases by eligible SNAP recipients at participating supermarkets, convenience stores, and other food retailers. When a SNAP EBT card was swiped at a point-of-sale register, the user selected EBT (as opposed to credit or debit), and entered a PIN. Funds were then electronically debited from the recipient's account and credited to the retailer's account. The balance on a SNAP EBT card was available by calling a customer service phone line typically printed on the back of the card.

### The Identity Theft and SNAP EBT Fraud Scheme:

11. An "access device" was any card, plate, code, account number, electronic serial number, personal identification number, or other means of account access that could be used, alone or in conjunction with another access device, to obtain money, goods, or services.

12. An "unauthorized access device" was any access device that was lost, stolen, or obtained with intent to defraud.

13. A "counterfeit access device" was any access device that was counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device.

2

14. "Skimming" was a criminal activity where a device is installed on a point-of-sale payment terminal, ATM, or fuel pump to capture card information and PIN entries.

15. "Cloning" was the illegal act of copying information from a legitimate credit, debit, or EBT card onto a counterfeit card.

16. "Device-making equipment"" was any equipment designed or primarily used for making an access device or counterfeit access device.

17. The defendants and their coconspirators used the following manner and means to execute their scheme to defraud using stolen EBT card numbers and PINs:

   a. They obtained EBT numbers and PINs from legitimate SNAP beneficiaries using skimmers and other means.

   b. They used and attempted to use counterfeit and/or unauthorized access devices linked to the stolen SNAP EBT card numbers and PINs to purchase candy, coffee, energy drinks, infant formula, and other food items without the knowledge or permission of the individuals rightly associated with those SNAP EBT card numbers and PINs.

   c. In doing so, they knowingly and intentionally caused stolen SNAP EBT card information to be transmitted in interstate commerce by means of wire communication in order to complete their fraudulent purchase of candy, coffee, energy drinks, infant formula, and other food items.

   d. They transported, resold, and intended to resell the candy, coffee, energy drinks, infant formula, and other food items they fraudulently purchased using stolen SNAP EBT card numbers and PINs.

**Use of Interstate Wire Transactions**:

18. The warehouse clubs wherein the defendants and their coconspirators purchased goods and wares in the Western District of North Carolina used interstate wire transmissions to send data, including membership data, from point-of-sale devices at their check-outs to servers in Arkansas.

19. The transfer of funds in a SNAP EBT transaction involved multiple wire transmissions through several states:

   a. Authorized SNAP retailers transmitted data from purchases made with SNAP EBT cards to financial services companies that contracted with the United States. These companies were located in states other than North Carolina.

   b. The financial services companies used their databases to verify that funds were available on the SNAP EBT accounts and, if the balances on the accounts were

3

sufficient, sent a funding request to the U.S. Treasury's SNAP account at the Federal Reserve Bank in Richmond, Virgina (FRB Richmond).

c. FRB Richmond initiated a transfer of SNAP funds to banks outside North Carolina. Such banks sent SNAP funds to food sellers' bank accounts to complete SNAP EBT card transactions.

## COUNT ONE
### 18 U.S.C. § 371
(Conspiracy to Defraud the United States)

20. Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

21. Beginning no later than July 30, 2024, and continuing through August 2, 2025, in Mecklenburg and Gaston Counties, within the Western District of North Carolina, and elsewhere, the defendants

**(1) MARIAN OVIDIU DUMITRU and**
**(2) CATALIN DUMITRU**

did knowingly combine, conspire, confederate and agree with one another, and with others both known and unknown to the grand jury, to defraud the United States and to commit offenses against the United States.

### Objects of the Conspiracy

22. The objects of the conspiracy in the Western District of North Carolina and elsewhere, include the following:

a. To defraud the United States by impairing and impeding the functions of the USDA, an agency and instrumentality of the United States, and

b. To commit offenses against the United States as follows:

i. By knowingly using, transferring, acquiring and possessing SNAP benefits having a value of $100 or more, in a manner contrary to law and regulations in violation of Title 7, United States Code, Section 2024(b)(1);

ii. By knowingly and with intent to defraud, possessing, and attempting to possess, fifteen or more unauthorized access devices, to wit: cards with magnetic strips cloned with stolen SNAP EBT account information and PINs, said possession affecting interstate and foreign commerce in violation of Title 18, United States Code, Section 1029(a)(3).

iii. By knowingly and with intent to defraud, possessing, and attempting to possess, device-making equipment, to wit: a Deftun MSR X6 capable of encoding and reading magnetic stripes on bank cards, said possession

4

affecting interstate and foreign commerce in violation of Title 18, United States Code, Section 1029(a)(4).

iv. By knowingly transferring, possessing, and using, without lawful authority, a means of identification of another person in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: access device and wire fraud, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

v. By knowingly executing and attempting to execute by means of a wire or radio communication in interstate and foreign commerce a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by the concealment of material facts, in violation of Title 18, United States Code, Section 1343.

### *Manner and Means of the Conspiracy*

23. The defendants and others known and unknown to the grand jury carried out the conspiracy in the manner and means, among others, described in paragraphs 14 through 19 of this Bill of Indictment.

### *Overt Acts*

24. In furtherance of the conspiracy and to affect the objects thereof, there was committed by at least one of the conspirators, in the Western District of North Carolina, and elsewhere, at least one of the following overt acts, among others:

a. On or about July 30, 2024, a person unknown to the grand jury opened warehouse club membership (WCM) number XXXXX3854 in the name of I.B. with an address in Dallas, Texas.

b. On or about September 18, 2024, a person unknown to the grand jury renewed WCM 3854 in the name of I.B. at a warehouse club in Durham, North Carolina.

c. On or about September 18, 2024, at a warehouse club in Durham, North Carolina, defendant CATALIN DUMITRU used WCM 3854 to purchase infant formula in the amount of $1,199.40 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

d. On or about October 6, 2024, at a warehouse club in Durham, North Carolina, defendant CATALIN DUMITRU used WCM 3854 to purchase candy in the amount of $535 and infant formula in the amount of $1,127.70 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

5

e. On or about October 9, 2024, at a warehouse club in Durham, North Carolina, defendant MARIAN DUMITRU used WCM 3854 to purchase energy drinks in the amount of $564.80 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

f. On or about November 1, 2024, a person unknown to the grand jury opened WCM number XXXXX8912 in the name of D.Z. with an address in Severn, Maryland.

g. On or about November 1, 2024, at a warehouse club in Severn, Maryland, a person unknown to the grant jury used WCM 8912 to purchase energy drinks in the amount of $1,242.56 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

h. On or about November 4, 2024, at a warehouse club in Durham, North Carolina, defendant CATALIN DUMITRU attempted to use WCM 3854 to purchase candy in the amount of $809.64 using warehouse club reward points and a counterfeit and unauthorized access device cloned with stolen information and PINs from legitimate SNAP EBT cards.

i. On or about March 9, 2025, at a warehouse club in Winston Salem, North Carolina, defendant MARIAN DUMITRU used WCM 3854 to purchase candy in the amount of $1,259.52 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

j. On or about March 9, 2025, at a warehouse club in Winston Salem, North Carolina, defendant MARIAN DUMITRU used WCM 3854 to purchase candy in the amount of $1,259.52 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

k. On or about August 1, 2025, at a warehouse club in Matthews, North Carolina, defendants MARIAN DUMITRU and CATALIN DUMITRU used WCMs 3854 and 8912 to purchase coffee and candy in the total amount of $15,619.20 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey.

l. On or about August 1, 2025, at a grocery store in Harrisburg, North Carolina, defendant MARIAN DUMITRU used a counterfeit and unauthorized access device cloned with stolen information and a PIN from a legitimate SNAP EBT card to purchase groceries in the amount of $146.80.

m. On or about August 2, 2025, at a warehouse club in Pineville, North Carolina, defendants MARIAN DUMITRU and CATALIN DUMITRU used WCMs 3854 and 8912 to purchase coffee and candy in the total amount of $19,206.20 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey and Massachusetts.

6

n. On or about August 2, 2025, at a warehouse club in Gastonia, North Carolina, defendants MARIAN DUMITRU and CATALIN DUMITRU used WCMs 3854 and 8912 to purchase coffee, candy, and other items in the total amount of $2,180.02 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey and Massachusetts.

o. On or about August 1 and 2, 2025, in Mecklenburg County, North Carolina, defendants MARIAN DUMITRU and CATALIN DUMITRU were in possession of fifteen or more counterfeit and unauthorized access devices, to wit: bank cards with magnetic strips cloned with stolen SNAP EBT account information and PINs.

p. On or about August 2, 2025, in Mecklenburg County, North Carolina, defendant MARIAN DUMITRU was in possession of device making-equipment, to wit: a Deftun MSR X6 capable of encoding and reading magnetic stripes on bank cards and blank cards with magnetic strips.

q. On or about August 1 and 2, 2025, in Mecklenburg County, North Carolina, defendants MARIAN DUMITRU and CATALIN DUMITRU transferred, possessed, and used, without lawful authority, the SNAP EBT account numbers and PINs of the SNAP recipients listed below:

    i. Y.P,

    ii. M.M,

    iii. L.M., and

    iv. I.J.

r. On or about each of the dates set forth below, for the purpose of executing the scheme and artifice described above, and attempting to do so, defendants MARIAN DUMITRU and CATALIN DUMITRU caused electronic sales transaction information to be transmitted in interstate commerce from points-of-sale at the warehouse club stores listed below in the Western District of North Carolina to servers in Arkansas:

|  | Date and Time | Location of Warehouse Club Stores Initiating Interstate Wire Transmissions | Amount of Transaction |
|---|---|---|---|
| i. | 8/1/2025 10:12 a.m. | Matthews, North Carolina | $855.83 |
| ii. | 8/1/2025 10:14 a.m. | Matthews, North Carolina | $1,132.87 |

7

|  | Date and Time | Location of Warehouse Club Stores Initiating Interstate Wire Transmissions | Amount of Transaction |
|---|---|---|---|
| iii. | 8/1/2025 10:42 a.m. | Matthews, North Carolina | $1,742.33 |
| iv. | 8/1/2025 10:44 a.m. | Matthews, North Carolina | $1,546.07 |
| v. | 8/2/2025 10:11 a.m. | Pineville, North Carolina | $1,462.87 |
| vi. | 8/2/2025 10:11 a.m. | Pineville, North Carolina | $626.37 |
| vii. | 8/2/2025 10:13 a.m. | Pineville, North Carolina | $1,937.22 |
| viii. | 8/2/2025 10:13 a.m. | Pineville, North Carolina | $266.94 |
| ix. | 8/2/2025 10:45 a.m. | Pineville, North Carolina | $1,451.20 |
| x. | 8/2/2025 11:45 a.m. | Gastonia, North Carolina | $14.98 |
| xi. | 8/2/2025 12:11 p.m. | Gastonia, North Carolina | $32.76 |

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
18 U.S.C. § 1029(a)(3)
(Possession of Fifteen or More Unauthorized Access Devices)

25. Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

26. On or about August 1 and 2, 2025, in Mecklenburg and Gaston Counties, North Carolina, in the Western District of North Carolina and elsewhere, the defendants,

**(1) MARIAN OVIDIU DUMITRU and
(2) CATALIN DUMITRU**

aided and abetted by each other, and by persons known and unknown to the grand jury, did knowingly and with intent to defraud, possess, and attempt to possess, fifteen or more unauthorized access devices, to wit: bank cards with magnetic strips cloned with stolen SNAP EBT account information and PINs, said possession affecting interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 1029(a)(3) and (c)(1)(A)(i) and 2.

8

**COUNT THREE**
18 U.S.C. § 1029(a)(4)
(Illegal Possession of Device-Making Equipment)

27.   Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

28.   On or about August 2, 2025, in Mecklenburg County, North Carolina, in the Western District of North Carolina, the defendant,

**(1) MARIAN OVIDIU DUMITRU**

aided and abetted by persons known and unknown to the grand jury, did knowingly and with intent to defraud, possess, and attempt to possess, device making equipment, to wit: a Deftun MSR X6 capable of encoding and reading magnetic strips on bank cards, said possession affecting interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 1029(a)(4) and (c)(1)(A)(ii) and 2.

**COUNT FOUR**
18 U.S.C. § 1343
(Wire Fraud)

29.   Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

30.   On or about August 1, 2025, in Mecklenburg County, North Carolina, in the Western District of North Carolina, and elsewhere, the defendants,

**(1) MARIAN OVIDIU DUMITRU and**
**(2) CATALIN DUMITRU**

aided and abetted by each other, and by persons known and unknown to the grand jury, devised and intended to devise the above-described scheme and artifice to defraud, and to obtain money and property, to wit: candy, coffee, energy drinks, infant formula, and other goods and wares, by means of materially false and fraudulent pretenses, representations and promises, and the concealment of material facts, and for the purpose of executing the scheme and artifice, and attempting to do so, caused certain signals and sounds to be transmitted in interstate commerce by means of wire communication, to wit: electronic sales transaction information and warehouse club membership information from the points-of-sale at a warehouse club store in Matthews, North Carolina, to servers in Arkansas, and to FRB Richmond.

All in violation of Title 18, United States Code, Sections 1343 and 2.

9

**COUNT FIVE**
18 U.S.C. § 1343
(Wire Fraud)

31.     Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

32.     On or about August 2, 2025, in Mecklenburg County, North Carolina, in the Western District of North Carolina, and elsewhere, the defendants,

**(3) MARIAN OVIDIU DUMITRU and**
**(4)  CATALIN DUMITRU**

aided and abetted by each other, and by persons known and unknown to the grand jury, devised and intended to devise the above mentioned scheme and artifice to defraud, and to obtain money and property, to wit: candy, coffee, and other goods and wares, by means of materially false and fraudulent pretenses, representations and promises, and the concealment of materials facts, and for the purpose of executing the scheme and artifice, and attempting to do so, caused certain signals and sounds to be transmitted in interstate commerce by means of wire communication, to wit: electronic sales transaction information and warehouse club membership information from the points-of-sale at warehouse club stores in Pineville and Gastonia, North Carolina, to servers in Arkansas, and to the FRB Richmond.

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS SIX through NINE**
18 U.S.C. § 1028A
(Aggravated Identity Theft)

33.     Paragraphs 1 through 19 in this Bill of Indictment are hereby realleged and incorporated by reference herein.

34.     On or about each of the dates reflected below for each of the Counts Six through Nine, in Mecklenburg and Gaston Counties, within the Western District of North Carolina, and elsewhere, defendants

**(1) MARIAN OVIDIU DUMITRU and**
**(2)  CATALIN DUMITRU**

aided and abetted by each other and others known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the EBT card numbers and PINs of the persons listed in each of Counts Six through Nine, during and in relation to felony violations of Title 18, United States Code, Sections 1029 and 1343, knowing that such means of identification belonged to another actual person as set forth below:

10

| Counts | Dates | Stolen Identity Victims | Location of Transfer, Possession and Use |
|---|---|---|---|
| **SIX** | 8/1/2025 | Y.P. | Warehouse Club in Matthews, NC |
| **SEVEN** | 8/2/2025 | M.M. | Warehouse Club in Pineville, NC |
| **EIGHT** | 8/2/2025 | I.J. | Warehouse Club in Pineville, NC |
| **NINE** | 8/2/2025 | L.M. | Warehouse Club in Gastonia, NC |

All in violation of Title 18, United States Code, Section 1028A.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

35. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given of Title 18, United States Code, Sections 982 and 1029, and Title 28, United States Code, Section 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to Title 18, United States Code, Section 981 and all specified unlawful activities listed or referenced in Title 18, United States Code, Section 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

   a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Five of this Bill of Indictment;

   b. All property used or intended to be used to commit the violations set forth in Counts One through Three of this Bill of Indictment; and

   c. If, as set forth in Title 21, United States Code, Section 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

36. The grand jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds set forth above:

   a. Items seized in the course of the investigation, including:

      i. one MSR X6 scanner,
      ii. 26 debit cards,

11

       iii.   13 mobile cell phones, and

       iv.   two tablets and chargers.

b.      A forfeiture money judgment in the amount of at least $766,000, such amount constituting the proceeds of the violations set forth in Bill of Indictment.

## A TRUE BILL

GRAND JURY FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

Michael E. Savage
Assistant United States Attorney

12